May it please the Court. The issue before the Court this morning is what jury instructions are required by the Supreme Court's decision in Farmer v. Brennan. In that case, the Court held that the Eighth Amendment imposes an affirmative duty on prison officials to take reasonable steps to protect inmates from substantial risk of serious harm at the hands of other inmates. That the Eighth Amendment imposes this duty on prison officials is not a controversial area of law. Indeed, this circuit has recognized this duty in decisions decided both before and after Farmer. The facts of this case place it squarely within Farmer's duty to protect. Mr. Clem was locked in his cell with his cellmate, inmate Godman, for the 4 o'clock count. He told Officer Lomeli that Mr. Inmate Godman had threatened to kill him if he was not removed from the cell. Lomeli's response was, deal with it, and he walked away. Minutes later, Mr. Clem was found convulsing in his cell, in and out of consciousness. Indeed, his jaw was broken in two places and skin had been chipped out of his cheek. Now, my understanding is that the guard involved testified that Mr. Clem simply said he wanted to move his cell. Is that right? The guard testified that, to the best of his recollection, that's what Mr. Clem said. But Mr. Clem testified that he told Officer Lomeli that his cellmate had threatened to kill him, and two other witnesses corroborated Mr. Clem's version of events. Now, ordinarily, if a jury heard all that evidence and found for the defendant, we would conclude, based on the normal presumptions attached to jury findings, that the jury had chosen to believe the guard and not the inmate or the witnesses. Would that be correct? That's correct under normal circumstances, but it would not be correct here. Why is that not true here? It's not true here because, with the instructions given, that the jury could have believed Mr. Clem's version of events and could have believed his witnesses and still returned a verdict in favor of Officer Lomeli. But there was nothing in the jury instructions that told the jury that the law imposed an affirmative duty to act on the part of Officer Lomeli to protect Mr. Clem. That, indeed, the jury instructions told the jury that, in order for Mr. Clem to prevail, they had to conclude that an act of Officer Lomeli had caused Mr. Clem's injuries. And they were never told that his failure to act could be the cause of the — could be the cause of his having to be liable. And that's important because, in our system, more often than not, the rule is that to be liable you have to do something, that there has to be a duty, you have to breach the duty and cause an injury. And it's the exceptional case where the law imposes a duty to affirmatively act and will impose liability for an omission. And the jury was never told that this was one of those cases. Alitoson, what do we do about the fact that the jury returned a general verdict but answered a special interrogatory that specifically referenced deliberate indifference? But even with that, still, the jury can answer that interrogatory, and the jury did not properly educate on the applicable law. And so without knowing that the law requires Mr. Lomeli to take reasonable steps to protect Mr. Clem, the jury could have believed everything that the plaintiff presented and still returned a verdict in favor of the defense. I'm not sure you're answering my question. Your attack is essentially on the district court's failure to clearly tell the jury what deliberate indifference was. But the jury was basically asked to answer a specific question that the defendant knew and disregarded it. So I don't understand what we're arguing about here. If I look at the record as a whole, then it seems to me that the jury was clearly told that it had defined an active indifference on the part of the guard. Well, the jury had defined an active indifference. But you can – one can disregard a risk and – by acting. Like, for example, somebody – if Mr. Clem, prior to being locked in his cell, had this conversation with Officer Lomeli, and Lomeli said, well, go to your cell, and he got locked in there, then Mr. Lomeli still would have disregarded the risk to Mr. Clem. But it was his affirmative act of telling him that he still had to go to his cell to the – where the person was kept. But that's not the question the jury was asked to answer. The jury was asked to answer, by failing to remove him from cell 115, failing to remove him, was Defendant Lomeli deliberately indifferent to a serious risk of harm to the plaintiff? Why doesn't that encapsulate Mr. Clem's theory of liability? And the jury answered that question, no. Because I think it still goes back to the jury needed to be told that Mr. Lomeli had the duty to protect him, that without knowing that the law imposed a duty, the jury could not have decided that Officer Lomeli deprived Mr. Clem of his rights, that they didn't – they were never told that he had a duty to act. But the jury was asked the question, by failing to remove him, was he deliberately indifferent? And that, I think, is sufficient to cover Mr. Clem's theory that he told the guard, my cellmate is trying to kill me, which would then trigger an obligation on the part of the guard to remove him from the cell. And if the jury was asked by failing to remove him, was this an act of deliberate indifference? And the answer was no. But they also weren't told that failing to act could, under the law, be deliberate indifference. And that's the difference here, is that they were never told that failure to do something could amount to deliberate indifference, that everything they were told was that it had to be an act of Officer Lomeli that would amount to deliberate indifference in the jury instructions. And the only place in the jury instructions where the district court even addresses the possibility that failure to act could give rise to liability was in characterizing Mr. Clem's theory of the case. Mr. Clem, again, was a pro se prisoner, and the judge said, our pro se prisoner says that the law has this duty. And the judge never said that that was correct. He instead instructed that the jury had to find that an act of Officer Lomeli caused Mr. Clem's injury. And in addition to that, which I think added further confusion, is the fact that the judge also instructed that the court, that the jury had to find that the act of Officer Lomeli was the moving force that resulted in Mr. Clem's injury. And that instruction, excuse me, had no applicability here. It's confusing because what does it mean to say that somebody's act, and here we're talking about a failure to act, which, again, the jury instructions don't talk about, but to say that we're the moving force, that that instruction comes out of now lines of cases when we're challenging a public policy. I think that's right, but there is a bit of irony here that the first part of the interrogatory is by failing to remove him, which sounds an awful lot like moving force, doesn't it? I don't think so. Because failing to remove, again, is that it's the his failure to do anything. And moving force, I just don't think that it makes any sense under the context of this case. And with Your Honor's permission, I'll finish answering a question and save my time. I don't think that it is sufficient to let the jury know that it's a affirmative duty for him to act, and instead leaves them with this sort of amorphous moving force idea, which, again, is not applicable in this case. Okay. You did a good job of watching the clock. You have almost two minutes left. We'll hear from the other side at this time. Good morning, Your Honors. I'm Vicki Whitney of the State Attorney General's Office, representing the defendant in Appellee, the California Correctional Officer Lomelli. The deliberate indifference instruction that was given to the jury by Judge Singleton in the trial court fairly and adequately covered the issues that were presented at trial. It correctly stated the law as set forth in Farmer v. Brennan, and it was not misleading to the jury. There was no duty on the part of the officer to avoid inaction. Inaction in the State's mind is not actionable? There is a duty, quite clearly under the law. However, it is mere semantics to say that disregarding a substantial risk of harm that you know about and failing to take measures to evade it, they're one and the same. There's no distinction between them. And quite clearly in this case, as in Farmer, the notion is what was the risk that was known to Officer Lomelli. That's where, as Judge Talman has pointed out, the jury came down with in terms of judging the credibility. Judge Singleton specifically stated on the record at the trial that the issue in this case came down to what did Officer Lomelli know. And when the witnesses were all presented and the testimony elicited at trial, and even as evidence in the opening brief of the appellant, all of the testimony surrounded what did Mr. Clem yell out or say to Mr. Lomelli. Mr. Lomelli testified along with another correctional officer who was doing the count that day as to what they heard, which was only that he was having trouble getting along with his cellmate and that he wanted to be out of that room. The investigative officer who interviewed Mr. Clem after the fact was never told by Mr. Clem in that interview that he had stated to Officer Lomelli that he was in danger of being killed or murdered by his cellmate. The instruction that was given told the jury that they had defined that the act of the defendant caused harm to the plaintiff. Correct. The act of the defendant being, I knew of a substantial risk of harm that he told me his cellmate was going to kill him. And my act was simply walking away and leaving it un-remediated. That is an act in and of itself. And so you're saying that the act of the defendant included inaction. That's correct. Didn't Clem object to this instruction? Well, no, he did not. That is another issue that needs to be addressed. I have in my notes here that at ER 85 to 88, the district court adopted Lomelli's proposed instruction and declined to give the failure-to-act instruction. That is not the case. Is it wrong? That is incorrect, Your Honor. What happened was both sides, both Mr. Clem and Mr. Lomelli, submitted jury instructions. Mr. Clem objected to the defendant's instruction number 26, which was the deliberate indifference instruction. The district court judge chose not to give either set and instead gave in the final instructions what is instruction number 5 based on the Ninth Circuit model instruction 9.25. And as to that instruction, there was no objection made on the record. In fact, to the contrary, when Judge Singleton asked the plaintiff if there were any comments specifically, Mr. — in the record, in the trial transcript at volume 2, page 240, lines 15 to 19, Judge Singleton said, Mr. Clem, are there any comments that you have to the jury instructions or to the verdict form? Mr. Clem answered, quote, none, sir, end quote. Again, on the very next page of the transcript, when explaining, if you have objections, make them. It's not too late, as I'm reading them to the jury. And at the point in the record where instruction number 5 was read to the jury, at trial transcript volume 2, page 267, line 15 through page 268, line 1, there was no objection made by Mr. Clem on the record to instruction number 5 at that time. Ms. Whitney, did you make that argument in your brief, waiver for failure to properly preserve the objection? No, it was not made in the brief. So haven't you waived — hasn't the State waived that argument? Yes. By simply answering to the question, he didn't necessarily — Okay. I mean, you answered Judge Hawkins' question, but we can't decide the case on that ground because you didn't argue it. That's correct. All right. Yes. Let's assume that the instruction as given was erroneous. Is the State's argument that even if it was erroneous, it was harmless? Yes, that's correct. And certainly the State recognizes that use of the model instructions doesn't insulate it from a challenge to see if it's sufficient. But in this case, we know that the verdict or that the instruction, even if it was erroneous, was harmless. The way that we know that is from the instruction itself and, as Judge Talman pointed out, from the jury verdict that came back, the special verdict form. By that, if you look at instruction number 5 that was given, in the beginning, the instruction specifically says that it's the plaintiff's allegations that the defendants deprived him of his rights under the Eighth Amendment. When defendant refused to immediately remove him from the cell, after plaintiff informed defendant that plaintiff's cellmate threatened to kill plaintiff if he did not leave the cell immediately, and then the instruction went from there. Did the State argue harmlessness in its brief? No, it did not. Is that also waived? No, I don't believe so, because it's still important to understand in the context of this case, when you're looking at a jury instruction, the test that the circuit has indicated is the case is that you've got to look to see if there was prejudicial error from it. And there was no prejudicial error because we know the verdict form that came back from the jury specifically found that he was not deliberately indifferent by failing to remove him from the cell. Whose burden is it to show harmlessness? Initially, if it's the appellant's burden to initially show that the instruction itself was error, and after that point, error can be presumed, and then it is up to the defendant to show that the error was, in fact, harmless. So in that context, what do we make of the State's failure to even brief the issue? Well, being that I took this from another deputy, I'm not exactly sure. I wish I had a nickel every time I heard that. Yes. And do I. But I think it's still important in the context of the case and the overall assessment of it, Your Honor, to look at the fact that, number one, even if you assume it was an error, there was just no harm because of the verdict that was returned in the special findings that were indicated in the instruction itself. And I think going back, first of all, to the first notion, which is, was there an error of law, again, the State's position is that that has not been shown by the appellant to even trigger the next phase of showing that there was an error that was harmful or harmless. And by that, we have to look back to Farmer v. Brennan because the appellant has argued that Farmer v. Brennan had a different standard, and that the inclusion of by failing to take measures to correct it after the clause of disregarding the risk was something that Farmer required. And I don't think that's completely accurate based on what the Farmer court did. In Farmer, when they defined what deliberate indifference was, the Supreme Court in that case specifically chose a standard of criminal recklessness and adopted that, and that standard was, quote, when a person disregards a risk of harm of which he is aware. And that, quote, that adoption by the court in Farmer as the test for deliberate indifference is exactly the instruction that was given in during instruction number 5 by the court. I mean, essentially, it's the model penal code's conscious disregard. That's correct. That's correct. And the Supreme Court in Farmer specifically said that that test was workable and that it was something that could meet with the cruel and unusual punishments clause. And they specifically adopted that as the test for deliberate indifference. Moreover, the holding in Farmer was that a prison official can only be found liable under the Eighth Amendment for denying the inmate the humane conditions if he knows of them and disregards an excessive risk to the inmate's health or safety. Again, that is consistent statement of the law as found in jury instruction number 5 that was given to the jury in this case. And as has come down in this case, the testimony came down to the fact of knowledge. The jury effectively, and even the witnesses that were presented by the plaintiff in this case, all dealt with the knowledge of whether there was a substantial risk of harm. And on that factor, you never even get to did they disregard it because there was no finding that he, that Officer Lamelli knew of it. Perfect use of time. Thank you. Rebuttal. Thank you. I'd like to start by finishing the sentence that my opponent was reading from Farmer, and that's accordingly, we reject petitioner's arguments and hold that a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to evade it. That's the holding in Farmer. After Farmer, the Ninth Circuit, the Third Circuit, the Seventh, and the Eighth So why doesn't this special interrogatory that the jury was asked to answer meet the Farmer standard? Because I think that the special interrogatory on its own, when considered with the jury instructions, the jury was never told that the law imposes a duty on officers to act, and that failure to act can give rise to liability. And so, from the jury's perspective, having heard the instructions that said that Mr. Clem had to prove that an active officer, LaMalle, caused his harm, and then put that with the special verdict form, that that first clause in the verdict form doesn't make any sense. It's not supported by any instruction that the court gave. Well, except that it asks them to find whether or not he was liable because he was being indifferent to the serious risk of harm. But without knowing that failing to act can result in liability, I realize I'm out of time to answer this. Go ahead and answer the question. That's no different than the judge could have put anything there, really, and without the jury knowing that failing to act could give rise to liability, it was meaningless that the special verdict form included that language. Okay. Thank you. Thank you both for your arguments. We want to thank your partners at Morrison and Forster for allowing you to take on this case pro bono. Thank both sides for their argument. And the case just argued will be submitted for decision.
judges: Hug, Hawkins, Tallman